SPOKANE VALLEY LAND & WATER CO. v. KOOTENAI COUNTY, IDAHO.

(District Court, D. Idaho, N. D.   August 19, 1912.)

1. TAXATION (§ 234*)—EXEMPTION OF IRRIGATION WORKS—CONSTRUCTION OF IDAHO STATUTE.

Rev. Codes Idaho, § 1644, subd. 12, which exempts from taxation irrigation canals and ditches and appurtenant water rights used by the owner exclusively for the irrigation of lands owned by him, must be limited in its application to cases where the land on which the water is used is situated within the state.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 381, 382; Dec. Dig. § 234.*]

2. TAXATION (§ 234*)—EXEMPTION OF IRRIGATION WORKS—CONSTRUCTION OF IDAHO STATUTE.

Such statute, however, fairly construed, applies to and exempts irrigation works owned by a corporation, the stockholders of which own the lands irrigated; but under a provision therein that, in case any water is sold or rented from any such canal or ditch, the same shall be taxed to the extent of such sale or rental, where the corporation which constructed the works sold all the land irrigated, with a perpetual right to a certain quantity of water thereon, retaining ownership of the works and water right with the right to sell or use any surplus and to collect a fixed sum from each user to cover maintenance and operating expenses, the works are taxable.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 381, 382; Dec. Dig. § 234.*]

3. TAXATION (§ 204*)—EXEMPTION STATUTES—CONSTRUCTION.

While statutes granting exemptions from taxation are not to be read so literally as to thwart their purpose or destroy their spirit, as a general

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

rule they are to be construed strictly, and substantial doubts touching their meaning and scope are to be resolved in favor of the public.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 322, 325, 332–334, 346; Dec. Dig. § 204.*]

4. COURTS (§ 328*)—JURISDICTION OF FEDERAL COURTS—AMOUNT IN DISPUTE.

The value of the matter in dispute in an action, for the purpose of determining the jurisdiction of a federal court, is the aggregate amount prayed for, and not the separate amounts of each cause of action stated.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 890–896; Dec. Dig. § 328.*

Jurisdiction of federal courts as determined by the amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Tennent-Stribling Shoe Co. v. Roper, 36 C. C. A. 459; O. J. Lewis Mercantile Co. v. Klepner, 100 C. C. A. 288.]

At Law. Action by the Spokane Valley Land & Water Company against the County of Kootenai, Idaho. On demurrer to amended complaint. Sustained in part.

Allen & Allen, for plaintiff.

N. D. Wernette, Co. Atty., of Cœur d'Alene, Idaho, and C. H. Potts, for defendant.

DIETRICH, District Judge. The plaintiff, a corporation organized under the laws of the state of Washington, brings this action to recover from the defendant county $5,056; the same being the aggregate of taxes paid by it under protest upon its irrigating canals in that county for the years 1909 and 1910. There are two causes of action. In the first, which relates exclusively to the taxes for 1909, it is shown that in that year plaintiff was the owner of 50 second feet of water in Fish Lake, together with a ditch by which the same is conveyed to East Greenacres, and there used for the irrigation of lands, all situate within the boundaries of Kootenai county, Idaho; also, of another water right to the amount of 250 second feet in the Spokane river, together with the dam and canal by which the water is diverted and conveyed from the river at Post Falls, Idaho, to the lands irrigated therefrom, such canal extending in a northwesterly direction about 18½ miles, the first 5½ miles thereof being in Idaho and the other 13 miles in the state of Washington. It is also averred that this Spokane river water is used partly for the irrigation of lands in Idaho and partly for the irrigation of Washington lands. It is further made to appear that, prior to 1909, plaintiff, being the owner of lands susceptible to irrigation from both of its canals, sold tracts thereof to divers persons, together with perpetual rights to receive water from these canals, and that all of its water rights in Fish Lake were thus sold; that the waters of Spokane river, not so disposed of, were used by the plaintiff in the irrigation of its own lands; and that none of the water distributed through either system is rented or held for rental, or used except upon lands owned by the plaintiff or owned by the several persons to whom such lands were sold with perpetual appurtenant water rights. At all times mentioned

in the complaint the plaintiff was the owner of the primary water rights, together with the diverting and distributing works, subject only to the rights of the several purchasers of lands already referred to. By reference to the water deed or contract, a copy of which is attached to the complaint, it appears that the purchaser is granted title to a certain described tract of land, together with a perpetual right to use water flowing in plaintiff's canals sufficient for the irrigation thereof, upon certain conditions, one of which is the annual payment of a specified amount per acre as maintenance and operation charges. The plaintiff retains the control, and assumes the responsibility of maintaining the canal systems and of properly distributing the water therefrom. The taxes, inclusive of penalties, upon the Fish Lake system for the year 1909, amounted to $198.24, and upon the Spokane river system to $2,640.50, making a total for the year of $2,838.74.

In its salient features the second cause of action, involving the taxes for 1910, is similar to the first, with the important exception that it relates only to the Spokane river system, the taxes upon which for that year, including penalties, amounted to $2,217.26.

The contention of the plaintiff is that all the property so assessed was exempt from taxation under subdivision 12 of section 1644 of the Revised Codes of Idaho, which is as follows:

"All irrigation canals and ditches and water rights appurtenant thereto, when the owner or owners of said irrigating canals and ditches use the water thereof exclusively upon land or lands owned by him, her or them: Provided, in case any water be sold or rented from any such canal or ditch, then, in that event, such canal or ditch shall be taxed to the extent of such sale or rental."

The defendant demurs to the amended complaint, and the objections raised thereto will now be considered.

[1] 1. It is first contended that, while the application of the statute relied upon is not in terms confined to cases where water is used exclusively for the irrigation of Idaho lands, such a restricted meaning is strongly implied by the considerations which must have led to its enactment, and in this view I am inclined to concur. There may be room for a difference of opinion as to the wisdom or policy of exempting from taxation canal property of any sort; but there would not seem to be even a semblance of a reason for extending such immunity to works constructed and maintained for the purpose of taking water out of Idaho for use in another state. In cases where the water is used for the irrigation of Idaho lands, it may be persuasively argued that the value of the irrigating system is correctly represented in the enhancement of the value of the lands irrigated therefrom, and that therefore, if such lands are fully assessed, the public revenues are not affected by the exemption of the irrigating canal.

But what can be said in favor of such a policy where the water is used upon lands beyond the reach of the Idaho revenue laws? By permitting its public waters to be carried beyond its borders

the state loses one of its most valuable assets, and by clothing the appropriator with the power of eminent domain it enables him wholly to destroy the productive value of such lands as are taken for right of way. To accept the plaintiff's view of the statute is therefore to hold that the state not only intended to permit a non-resident to come within its boundaries, and, without price, appropriate water for use outside the state, and convert productive, revenue-bearing lands into nonproductive rights of way for canals and ditches, but also intended to encourage such an enterprise by exempting from taxation the entire property, including the right of way, which, but for the project, would bear its share of the burden of taxation; and all without any reciprocal advantage or possible benefit accruing to the state directly or indirectly. It is thought that, in the absence of language unequivocally expressing it, an intent so extremely altruistic ought not to be imputed to the Legislature of the state. The truth in all probability is that, in framing and enacting the statutory provision relied upon, the Legislature took no thought of a case where the irrigated lands were outside the state. It was concerned with the taxation and exemption of property subject to its jurisdiction only, and was not providing for a case where a part of the property involved lies beyond its reach. It is a familiar rule that in the construction of statutes such meaning will be given as will best harmonize with the considerations out of which they have sprung and is most likely to effect the object to accomplish which they were enacted. Endlich on Interpretation of Statutes, par. 73.

"The general language of statutes will be limited to such persons and subjects as it is reasonable to presume the Legislature intended it should apply. Throughout the entire history of English and American law the courts have been ruling that the general words of statutes were to be restrained in import and application whenever the taking of them in a literal sense would lead to absurd and hurtful consequences." State v. Smiley, 65 Kan. 240, 69 Pac. 199, 67 L. R. A. 903.

The case of State v. Holcomb, 85 Kan. 178, 116 Pac. 251, is very closely in point. By section 1 of article 2 of the Kansas Constitution, all property used exclusively for municipal purposes is exempt from taxation. The city of Kansas City, in Missouri, owned a water plant situate in the state of Kansas, which it claimed was exempt from taxation under this constitutional provision and the statutes enacted in pursuance thereof, for the reason that the plant was used exclusively for municipal purposes. The Supreme Court of Kansas, in rejecting the claim, said:

"It is true that the constitutional provision relating to taxation does provide that all property used exclusively for municipal purposes shall be exempt; but the fact that the provision does not expressly say that the Constitution is made for Kansas is not a good basis for an inference that the framers were attempting to regulate and protect the municipalities of other states. The provisions of both the Constitution and the statutes in relation to exemptions from taxation must be understood as referring to Kansas and to the counties, municipalities, and families of Kansas, over which it has power of visitation and control."

It is concluded that subdivision 12 of section 1644 provides no exemption in cases where the lands irrigated are not within the state of Idaho.

[2] 2. It is further urged that the statute does not avail the plaintiff where it has sold water rights for the irrigation of lands situate in the state of Idaho. The question is not free from great difficulty. It will be noted that the precise language of the law restricts the exemption to cases where "the owner or owners of said irrigating canals or ditches use the water thereof exclusively upon land or lands owned by him, her or them." Taken literally, the language does not effect an exemption in favor of the plaintiff covering water rights which it has sold to others. In such cases the ownership of the irrigated land and the ownership of the canal have been severed. If we take cognizance of the several classes of irrigating systems prevailing in Idaho, it must be admitted that the language of the statute was not aptly chosen to make the distinction which it is reasonable to suppose was intended by the Legislature. There are small ditches, and possibly a few large canals, where, strictly speaking, the ownership of the irrigating works and the ownership of the lands irrigated rest in the same person or persons; but generally in the maintenance and operation of systems of considerable magnitude associational or joint ownership is found to be unwieldy, if not wholly impracticable, and incorporation is resorted to as furnishing a more efficient and satisfactory method of administration and control. From an early day a common, if not the most common, type of ownership in Southern Idaho, where irrigation almost universally prevails, is a species of corporation, the stockholders in which are the farmers who actually use the water upon their farms, each share of stock entitling the holder to the use of a certain amount of water, or water sufficient for the irrigation of a certain amount of land, and the assessments or dues upon such stock are sufficient only and are levied for the sole purpose of defraying the expenses of maintaining and operating the system. Hall v. Eagle Rock & Willow Creek Water Co., 5 Idaho, 551, 51 Pac. 110.

In the case of such corporations, strictly speaking, the legal title to the canal and appurtenant water right is in the corporation, whereas the water is used upon land belonging severally to the individual stockholders, and therefore there is not absolute identity of ownership of the irrigating system and the irrigated lands. No reason, however, is apparent why such a canal should, for the purposes of taxation, be differentiated from a canal directly held by the water users as joint owners thereof. The corporation but holds the naked legal title in trust for its stockholders, and the owners of the land as stockholders are therefore the beneficial owners of the canal, possessing all the powers of control and disposition incident to full ownership. It is therefore thought that, under a fair construction of the statute, such canals must be held to be exempt from taxation. But obviously there are material distinctions between such a system of ownership and one like that described in the amended complaint. The plaintiff here not only retains the legal title to the canals, but it reserves to

itself the entire management and control thereof. None of the powers ordinarily incident to ownership are exercised by the water users, nor are they the holders of the entire beneficial interest. It may be conjectured that, if water rights are sold under contracts or deeds similar to those attached to the complaint up to the full capacity of the canal, the residual interest remaining in the plaintiff company will be a worthless shell; but such is not the necessary result. The purchaser is, under the contract, entitled only to the use of the stipulated amount of water during the specified season of four months, from May 15th to September 15th, of each year. It is entirely possible that during the other seasons of the year, if not during this season, the water may, to the advantage of the plaintiff, be applied to some other beneficial purpose, possibly for generating power.

But if it be assumed that no other use can be made of the water, it does affirmatively appear that under the terms of its contracts or deeds (Exhibit A) the plaintiff is entitled to receive a fee from each water user annually at the rate of $1.50 per acre, or $300 per second foot. To be sure, it is recited in the instrument that this fee is to cover cost of maintenance and operation; but, whatever may be the actual cost of maintaining and operating the system, this charge is absolute, and may become a source of substantial profit. The plaintiff alleges its ownership of a water right of 250 second feet in the Spokane river; but, if we assume the delivery of only 200 second feet, its annual income from this source alone would aggregate $60,-000, and it is doubted whether the presumption should be indulged that it requires $60,000 annually to maintain and operate an irrigating canal 18 miles in length, and to distribute therefrom to farmers along its course 200 second feet of water during the period of four months. May it not, with reason, be assumed that in establishing the annual maintenance and operating charge, the liability of the plaintiff to pay taxes was taken into consideration? But, however that may be, and whether the annual dues paid by water users are more than sufficient to pay the maintenance and operating charges or not, it is not made to appear that the result of a literal interpretation of the statute will necessarily be so absurd or unreasonable as to justify a strained construction, and, if we give to the language its natural and ordinary import, the case made by the complaint does not fall within the terms of the statutory provision. The landowners are not the owners of the canal; their right to use water is but an easement or servitude.

[3] It is expressly provided in the statute that, where a company "sells" water, the "canal or ditch shall be taxed to the extent of such sale." While exemption statutes are not to be read so literally as to thwart their purpose or destroy their spirit, as a general rule they are to be construed strictly, and substantial doubts touching their meaning and scope are to be resolved in favor of the public. Cooley on Taxation (3d Ed.) 356; Murray v. Board, 28 Colo. 427, 65 Pac. 26; State v. Holcomb, 81 Kan. 879, 106 Pac. 1030, 28 L. R. A. (N. S.) 251; Ottawa University v. Franklin County, 48 Kan. 460, 29 Pac. 599; Hart v. Plum, 14 Cal. 148; Davenport National Bank v. Mittelbuscher (C. C.) 15 Fed. 225; Bailey v. Magwire, 22 Wall. 215, 22

L. Ed. 850. In Hoge v. Railroad Co., 99 U. S. 348, 25 L. Ed. 303, it is said that:

"The intention of the Legislature to grant the immunity must be clear beyond a reasonable doubt. It cannot be inferred from uncertain phrases or ambiguous terms. * * * If a doubt arise as to the intent of the Legislature, it must be solved in favor of the state."

While there are to be found, in Empire Land & Canal Co. v. Board of Commissioners, 21 Colo. 244, 40 Pac. 449, and in Idaho Fruit Land Co. v. Great Western Beet Sugar Co., 18 Idaho, 1, 107 Pac. 989, certain expressions tending to support the plaintiff's contention, the cases are wholly indecisive of the point under consideration. My conclusion is that, to the extent that the plaintiff has sold water rights, its canal systems are subject to assessment and taxation.

[4] 3. The two points already discussed are the only ones argued in the briefs; but others are stated in the demurrer, and they will now be briefly disposed of. It is to be inferred from the allegations of the complaint that some of the water distributed through the Spokane river canal is used upon lands owned by the plaintiff in Idaho. To that extent the system is exempt from taxation. But it is thought that the defendant is entitled to a description of such lands, and also to a statement of what proportion of the entire amount of water distributed by plaintiff is so used. It is further thought that if, in amending its pleading, the plaintiff does not abandon its present claims of exemption, its first cause of action, so far as it relates to the Fish Lake system, should be separately stated, so that there will be in the complaint three causes of action instead of two. In this connection, however, it is proper to suggest that the separate statement of the cause of action relating to the Fish Lake system will not, as counsel for the defendant seem to suppose, affect the question of jurisdiction. The value of the matter in dispute in the action is the aggregate prayed for, and not the amount of each cause of action. Armstrong v. Ettlesohn (C. C.) 36 Fed. 209; Thompson v. Southern Ry. Co. (C. C.) 116 Fed. 890; Heffner v. Gwynne, etc., 160 Fed. 635, 87 C. C. A. 606.

Each cause of action should also contain a clear averment of the amount of water used upon Idaho lands, and the amount, if any, used upon Washington lands, and also the amount, if any, used upon lands belonging to the plaintiff in Idaho, so that, in accordance with the views hereinbefore expressed, it may be determined upon the face of the pleading itself what part of the total amount paid as taxes was illegally exacted. There should also be an averment to the effect that in valuing the property the revenue officers made no allowance or exemption on account of water used by plaintiff upon its own lands in Idaho.

The three several objections, that the court is without jurisdiction, and that there is a defect of parties, and that there is a misjoinder of causes of action, are overruled. The plaintiff is given 20 days in which to serve and file a second amended complaint.